# SUPREME JUDICIAL COURT

FOR THE

COUNTIES OF SUFFOLK AND NANTUCKET, MARCH
TERM 1828, AT BOSTON.

━━━━━━━

PRESENT :

Hon. ISAAC PARKER, Chief Justice,
Hon. SAMUEL PUTNAM, ⎫
Hon. SAMUEL S. WILDE, ⎬ Justices.
Hon. MARCUS MORTON, ⎭

---

ELIZABETH HILL, Administratrix, *versus* MARGARET
T. WELLS.

A complaint under *St.* 1785, *c.* 66, § 2, for the maintenance of a bastard child, partakes of the nature both of a criminal and a civil suit, and in the city of Boston it is cognizable by the Police Court and the Municipal Court.

Where upon a petition for *certiorari*, it appeared that the proceedings upon such complaint were before and by the authority of the "Justices' Court for the county of Suffolk and of the Police Court for the city of Boston," it was *held*, that as the same persons were the justices of both of these courts, they must be presumed to have acted as justices of the Police Court, and the description of the other court might be rejected as surplusage.

The minute interest which the justices of the Municipal and Police Courts in Boston have, as inhabitants, in such a prosecution, does not disqualify them for taking cognizance thereof, there being no other court within the city, which has jurisdiction in such cases.

The statute does not require that the complainant in such a prosecution shall be an inhabitant or have a legal settlement in any town in the county in which the prosecution is instituted.

*Jan.* 1826. MORTON J. delivered the opinion of the Court. This is a petition for a writ of *certiorari* to remove the proceedings of

104

the Municipal Court for the city of Boston upon the com- <span style="float:right">Hill<br>*v.*<br>Wells.</span>
plaint of the respondent, charging the petitioner's intestate
with being the father of a bastard child born of her body.
The respondent having been notified, has appeared before us,
and the parties have been heard upon the merits of the case ;
and whether the petition shall be granted or refused, depends
upon our opinion of the legality of the proceedings before the
Municipal Court.

The first and principal objection is to the jurisdiction of that
Court.

By the second section of the " act for the punishment of
fornication, and for the maintenance of bastard children "
(*St.* 1785, *c.* 66), jurisdiction of all cases arising under that
act was expressly given to the Court of General Sessions of
the Peace.   This jurisdiction remained unchanged in that
court till the year 1800 ; when by *St.* 1799, *c.* 81, the
Municipal Court for the town of Boston was created.   This
statute gave to the Municipal Court " cognizance of all crimes
and offences committed within the town of Boston,"[1] which
were before " cognizable in the Court of General Sessions
of the Peace."   Did these words transfer to the Municipal
Court cases arising under the bastardy act ?   If they did not,
the jurisdiction remained in the General Sessions till 1804,
when it was transferred to the Common Pleas, where it still
remains.   *St.* 1803, *c.* 154.   Will the words " all crimes
and offences " include prosecutions for bastardy ?   Is this a
criminal or a civil suit ?

The proceedings under the several bastardy acts of Eng-
land are considered criminal prosecutions and are regulated
by the rules which govern criminal processes.   Persons ex-
empted from imprisonment on civil processes are liable to
commitment for disobedience of orders of the Sessions for the
maintenance of bastard children.   *Rex* v. *Archer*, 2 T. R.
270 ; *Rex* v. *Bowen*, 5 T. R. 156.

Although the provisions of the English statutes are essen-
tially like ours, yet in some particulars, and especially in the
forms of proceeding under them, they so far differ, as the

---

[1] See Revised Stat. *c.* 86, § 4.

Hill
*v.*
Wells.

no very strong argument can be drawn from their genera. analogy. By the English statutes the prosecutions are commenced by the overseers of the poor, and the mother may be compelled to testify. She also is liable to commitment for refusing to contribute towards the support of the bastard child. On the contrary, by our statute the mother is necessarily a party to the suit, and is not subject to any order of the court in relation to the maintenance of the child.

A process under the statute of bastardy of Connecticut, which resembles ours, has been held to be a civil suit. *Hinman* v. *Taylor*, 2 Connect. R. 357. In Maine, a process under their statute, which is a copy of ours, has been considered a civil suit so far as that the prevailing party is entitled to recover his costs. *Mariner* v. *Dyer*, 2 Greenl. 172. And the same point is said to have been settled under our own statute. *Wormstead's Case*, 1802, 2 Dane's Abr. 517.

That incontinence is a crime, cannot be questioned. And although in England it is cognizable only by the spiritual courts (4 Bl. Comm. 65), yet in this State it is punishable by virtue of the first section of the statute of 1785, *c.* 66. And in England the fathers and mothers of bastard children are punishable by statute.

A prosecution by the mother against the putative father of a bastard child under our statute, seems to be *sui generis*, and probably is not strictly either a civil or criminal suit, but its object and form partake of the nature of both.

Many of the rules governing civil actions are applicable to it. It is commenced by and in the name of an individual, and not in the name of the Commonwealth. The complainant may, in any stage of the proceedings, discontinue the suit, or release the cause of action. She also may amend her complaint as in civil suits. Although the complainant is a competent witness, yet she cannot be compelled to make complaint or to testify in the case. Depositions are admissible on the trial. The defendant is not arraigned, but appears and pleads by attorney ; and if he prevails, is entitled to recover costs as the prevailing party.

The object of the suit is the redress of a civil injury. It is to compel the putative father to aid the mother in the sup-

port and maintenance of the child. This end is secured by a bond from the father, for the failure to give which he is liable to punishment. Although one object of the statute seems to be, to provide security to the town liable to support the bastard, yet it has omitted to provide any remedy for the town, unless the mother chooses to prosecute.

This process has also many of the properties and characteristics of a criminal suit. It is founded upon a complaint made under oath. It is commenced by a criminal capias or warrant. It is returnable immediately upon the arrest of the defendant. He is not entitled to any previous stated notice, as in civil actions. It is returnable to a court of inquiry. The officer making the arrest cannot take bail. The defendant is bound to answer *instanter*, upon being brought before the magistrate, and if there is probable cause for the prosecution, he is bound over for trial, and upon his failure to give bond is committed.[1] The final order of the court, that the defendant aid the mother in the maintenance of the child, and give security to perform the order, and also to save the town harmless, is more like a sentence than a civil judgment ; as the defendant, on failure to comply with the order, is immediately committed, and not entitled to a discharge by taking the poor debtor's oath.[2]

This process being neither wholly civil nor wholly criminal, but having many of the features and incidents of each, we are left to determine from the manner in which the legislature has treated it, whether they intended to include it in the one or the other class of suits. And they might well, in some respects, treat it as a civil, and in others, as a criminal suit.[3]

We have already seen, that the statutes in force in England, at the several periods of the legislation upon the subject cf bastardy by the colonial and provincial legislatures, treated it as " a criminal matter." In all our ancient statutes it is classed with " crimes and offences." In 1692 the provincial

[1] See Revised Stat. *c.* 49, § 1.

[2] But see *St* 1825, *c.* 173; Revised Stat. *c.* 49, § 5.

[3] In *Wilbur* v. *Crane*, 13 Pick. 289, it is said that a complaint by a woman under the bastardy act, accusing a man of being the father of her bastard child, though in some respects in form of a criminal prosecution, is in substance and effect a civil suit.

Hill
*v.*
Wells.

Hill
*v.*
Wells.

108

legislature, in revising the colonial laws, include provisions in relation to bastardy, in "an act for the punishing of criminal offenders," with those against profane swearing, drunkenness, larceny, burglary, robbery, libels, forgery, and perjury. *Prov. St.* 4 *W. & M. c.* 6, (Anc. Chart. &c. 239). It will also be seen, by a reference to these statutes and to the revised statute now in force, that cognizance of this subject has, for nearly two centuries, been vested in a court of criminal jurisdiction. We are therefore fully satisfied, that in the transference of the powers of the Court of Sessions to the Municipal Court by the statute of 1799 above cited, the legislature intended to include all cases arising under the statute of bastardy.

One other consideration fully confirms us in this construction. By *St.* 1800, *c.* 44, the Court of Sessions for the county of Suffolk was deprived of a jury. If therefore the jurisdiction was not transferred in 1800 to the Municipal Court, but remained in the Sessions, the latter court was unable to execute the laws of bastardy, because, by the act, prosecutions under it were to be tried by jury ; and the legislature had deprived the court in which alone they had vested the jurisdiction, of the means of trying the complaints in the only way in which by law they could be tried.

We are for these reasons of opinion, that the objection to the jurisdiction of the Municipal Court is not well founded.

But it is further contended, that if the Municipal Court has jurisdiction of prosecutions of this kind, yet that the preliminary proceedings were irregular and void, and so the case never was rightfully before the court.

It appears that the examination and accusation were made before "the justices of the Justices' Court for the county of Suffolk and of the Police Court for the city of Boston," and that the warrant upon such accusation, for the apprehension of the putative father, was granted by the same authority. It is now said, that although there is a "Justices' Court" and a "Police Court" established by law, yet that there is no such tribunal as is described in the combined title of both. But we learn from the statute, that the same persons are justices of both these courts, and we are of opinion, that if either of the

courts had authority to take the examination and grant the warrant, the justices must be presumed to have acted in the capacity in which they were authorized to act, and the description of the other court may well be rejected as surplusage

The Police Court, by *St.* 1821, *c* 109, [see Revised Stat. *c.* 87, § 3,] has cognizance of all crimes, offences and misdemeanors committed within the city of Boston, whereof justices of the peace had cognizance before the passing of that act. The same reasoning which satisfied our minds that the Municipal Court has jurisdiction of the case, shows that the Police Court was authorized to institute the preliminary proceedings.

The objection that the justices of these two courts are interested, and therefore not authorized to adjudicate cases of bastardy, cannot be supported. It is true, that being inhabitants of Boston, they have a very minute interest, and that where a prosecutor has an option in the tribunals before which he will prosecute, he may not select an interested tribunal. Where a penalty recoverable before a justice of the peace enures to a town, it shall not be recovered before a magistrate who is an inhabitant of the town entitled to the penalty. *Pearce* v. *Atwood*, 13 Mass. R. 324. In all cases where the penalty enures to the Commonwealth, or where a crime is punishable by fine, every citizen of the Commonwealth has an interest in the conviction, and the tribunal must necessarily have the same kind of interest which the justices of the Municipal and Police Court have in the present case. But from the necessity of the case, such crimes and forfeitures must be tried by citizens of the Commonwealth.

The legislature have given jurisdictions to these courts, notwithstanding the interest which the justices may be supposed to have, and that this was a constitutional and proper act, is too plain to be doubted. *Commonwealth* v. *Ryan*, 5 Mass. R. 90.[1]

The objection that the mother of the bastard child was not an inhabitant of the city, does not appear from the papers to

---

[1] See *Davis* v. *Salisbury*, 1 Day, 278.

*Margin:* Hill *v.* Wells. .09

Hill
v.
Wells.

be founded in fact. But if it should be shown, it could not avail the petitioner. The principal object of the suit, which can be maintained only by the mother, is to compel the putative father to aid the mother in the support of the child. The statute provides that *any single woman* may make complaint, and does not require that she should be an inhabitant or have a legal settlement in any town in the county in which she may commence her suit, or even in the Commonwealth.

The petitioner, having failed to show any irregularity in the proceeding which will authorize us to reverse the judgment upon certiorari, can take nothing by her petition.

*Rand*, for the petitioner.

*Fletcher*, for the respondent.